UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SEAN COLBY HOARD,

Case No.:2:13-cv-02161-AC

Plaintiff,

FINDINGS AND
RECOMMENDATION

v.

JERIAL HARTMAN; WILLIAM
ORTEGA; ESPIRIDION SALDIVAR;
HAROLD BROWN; JAMES TAYLOR;
and MARK NOOTH,

Defendants.

ACOSTA, Magistrate Judge:

*Introduction*

*Pro se* plaintiff Sean Colby Hoard ("Hoard"), a prisoner currently incarcerated at Eastern

Oregon Correctional Institute, filed this 42 U.S.C. § 1983 lawsuit against correctional officers

Jerial Hartman ("Hartman"), William Ortega ("Ortega"), Espiridion Saldivar ("Saldivar"), and

Sergeant Harold Brown ("Brown") in their individual capacities, and against Oregon Department

of Corrections ("ODOC") administrative officials, James Taylor ("Taylor") and Mark Nooth ("Nooth") in their official and individual capacities (collectively, "Defendants"). Hoard alleges Hartman, Ortega, Saldivar, Brown, and Nooth subjected him to cruel and unusual punishment in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and article I, sections 13 and 16 of the Oregon Constitution. In addition, Hoard alleges Nooth and Taylor deprived him of life, liberty, and freedom without due process in violation of the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 11 of the Oregon Constitution. He also asserts state common-law claims for assault, battery, and negligence against Defendants. Hoard seeks a declaratory judgment as well as compensatory, nominal, and punitive damages.

Defendants now move for summary judgment. First, Defendants contend the Sixth Amendment does not apply to the instant proceeding because that provision governs criminal prosecutions. With respect to Hoard's § 1983 claims, Defendants argue: (1) Nooth should be dismissed from the lawsuit because he was not personally involved in depriving Hoard of any constitutional right; (2) Hoard's Fourteenth Amendment claim fails as a matter of law; (3) Hoard's Eighth Amendment claim fails because Hartman, Ortega, Saldivar, and Brown did not use excessive force against Hoard; and (4) even if they did violate Hoard's constitutional rights, Defendants are shielded from liability by the qualified immunity doctrine. Defendants also argue Hoard's state law claims are barred by the Eleventh Amendment. With respect to damages, Defendants argue Hoard is not entitled to declaratory relief or punitive damages, and all Defendants are immune from monetary damages in their official capacities.

After careful review of the record, the court finds that Defendants' Motion for Summary Judgment should be granted in part and denied in part. Summary judgment should be granted in

favor of Defendants with respect to Hoard's: (1) § 1983 claims against Nooth; (2) Fourteenth Amendment claim against Taylor; and (3) state common-law and constitutional claims. Summary judgment should be denied as to Hoard's Eighth Amendment claims against Hartman, Ortega, Saldivar, and Brown because triable issues of fact exist regarding the alleged use of excessive force.

*Procedural Background*

Hoard initiated this lawsuit by filing a complaint on December 9, 2012. Defendants filed a motion for summary judgment ("First Motion") on June 25, 2014. The next day, on June 26, 2014, Hoard filed an amended complaint ("First Amended Complaint") and a declaration in support of the First Amended Complaint ("Declaration"), attesting to the contents of the First Amended Complaint. Then, on September 9, 2014, Hoard filed an affidavit ("First Affidavit") in opposition to the First Motion. On October 9, 2014, the court granted Hoard leave to file an amended complaint and denied the First Motion as moot. (ECF No. 48.) Hoard filed his Second Amended Complaint ("Second Amended Complaint") on October 22, 2014; it was a photocopy of the First Amended Complaint with all references to former defendant Joe Capps ("Capps") crossed out. On October 28, 2014, the court ordered the lawsuit to proceed on the Second Amended Complaint and terminated Capps from the action. (ECF No. 52.) On January 5, 2015, Defendants filed a second motion for summary judgment ("Second Motion"), which is currently before the court. Hoard responded by filing a second affidavit ("Second Affidavit") on January 20, 2015. Defendants submitted a reply on February 17, 2015.

/ / / / /

/ / / / /

/ / / / /

FINDINGS AND RECOMMENDATION        3        {JAS}

*Preliminary Procedural Matters*

I.  Summary Judgment Evidence

A brief discussion of the evidence the court may consider in deciding Defendants' Second Motion is necessary.  First, the court will consider the First Affidavit as evidence in evaluating the Second Motion.  Although the court is not required to sift through the record in search of genuine issues of fact, it has discretion to consider evidence outside the summary judgment papers when appropriate. *Carmen v. San Francisco United Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Here, exercising such discretion to consider the First Affidavit is appropriate for several reasons. First, the exhibits attached to the First Affidavit provide relevant factual context.  More importantly, Hoard filed his First Affidavit in response to the First Motion, which is almost identical to the Second Motion presently before the court.  The only significant difference between the First and Second Motions is that the latter addresses Hoard's Sixth and Fourteenth Amendment and official-capacity claims in addition to those addressed in the First Motion. Based on the similarity between the two motions, it would be reasonable for Hoard, a *pro se* plaintiff, to assume that he was required to respond only to Defendants' new arguments and that the First Affidavit would be considered in evaluating the arguments made in both motions.  The court therefore will consider the First Affidavit in evaluating the Second Motion.

Hoard also relies on factual allegations made in the Second Amended Complaint. Although an unverified complaint is insufficient to counter summary judgment, a verified complaint may be used for that purpose "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987) (per

curiam), *amended by* 135 F.3d 1318 (9th Cir. 1998)).  A pleading is "verified" if the plaintiff affirms that the facts in the complaint are true under the pains and penalties of perjury.  28 U.S.C. § 1746; *Schroeder v. MacDonald*, 55 F.3d 454, 460 & n.10 (9th Cir. 1995) (finding a complaint that stated "the facts stated in the . . . complaint [are] true and correct as known to me," to be sufficiently verified).

The First Amended Complaint is verified because it is sworn and sets forth specific facts based on Hoard's personal knowledge.  The Declaration states that: (1) the facts alleged in the First Amended Complaint "are true to the best of [Hoard's] knowledge and belief"; and (2) such statements were "made for use as evidence in court and [are] subject to penalty of perjury." (Decl. in Supp. of Am. Compl. 1, ECF No. 39.)  As noted above, the First Amended Complaint is identical to the Second Amended Complaint in every respect except for the elimination of Joe Capps as a defendant, but the Second Amended Complaint is not verified because it is not accompanied by a new declaration attesting to its contents.  The First Amended Complaint remains in the record as evidence, however, even though it was superseded as the operative complaint.  And because the First Amended Complaint is the evidentiary equivalent of an affidavit, the court will consider it as such for the purposes of evaluating summary judgment. *See, e.g.*, *Bechler v. Macaluso*, 1:08-cv-03069-CL, 2010 WL 2034635, at *1 & n.1 (D. Or. May 14, 2010) (considering a verified complaint as evidence equivalent to an affidavit even though a subsequent unverified complaint superseded the verified complaint as the operative pleading); *Hoskins v. Haymore*, C-96-0428 CAL, 1998 WL 470480, at *2 (N.D. Cal. Aug. 5, 1998), *rev'd on other grounds*, 188 F.3d 513 (9th Cir. 1999) (liberally construing an unverified amended complaint as a verified complaint because the original complaint was verified and the amended complaint was filed in response to the court's order); *Cassady v. Walker*, 2012 WL 899913, at *1

n.3 (S.D. Ga. Feb. 6, 2012) (allowing the plaintiff to rely on a verified original complaint and its accompanying exhibits in opposing the defendant's summary judgment motion because although the original complaint was superseded as the operative pleading, it was the evidentiary equivalent to an affidavit); *Boxdorfer v. Thrivent Fin. for Lutherans*, No. 1:09–cv–0109-DFH-JMS, 2009 WL 2448459, at *2 & n. 2 (S.D. Ind. Aug. 10, 2009) (considering an original verified complaint "only for evidentiary purposes" despite the presence of a superseding unverified amended complaint because it was "still a signed statement of facts equivalent to an affidavit with respect to factual matters within plaintiff's personal knowledge.").

## II.  Liberal Construction of *Pro se* Claims

As noted above, Hoard purports to challenge the alleged excessive force through § 1983 as a violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and article I, sections 13 and 16 of the Oregon Constitution.  He also challenges the procedural sufficiency of the prison grievance procedure pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 11 of the Oregon Constitution. Hoard does not plead his claims for relief with particularity, but his *pro se* status obligates the court to construe his claims liberally.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

There are several problems with the specific claims alleged in Hoard's complaint.  First, Hoard's Sixth Amendment claims do not arise in the context of a criminal prosecution, and the Sixth Amendment is therefore inapplicable.  *See* U.S. Const. Amend. XI (delineating the rights that the accused shall enjoy "[i]n all *criminal prosecutions*") (emphasis added).  In addition, § 1983 is not a proper mechanism to bring claims based on a state constitution.  Finally, Hoard's first and second claims for relief indicate that his state constitutional claims are being brought against all Defendants, but his request for declaratory relief makes clear that those claims apply

only to Hartman and Taylor. (*See* Second Am. Compl. 4.) Accordingly, the court construes Hoard's claims as follows: (1) a § 1983 claim against Taylor and Nooth, in their individual and official capacities, based on allegations that they violated Hoard's Fourteenth Amendment right to due process; (2) a § 1983 claim against Hartman, Ortega, Saldivar, and Brown, in their individual capacities, and Nooth in both his individual and official capacities, based on allegations that they violated Hoard's Eighth Amendment right to be free from cruel and unusual punishment; and (3) supplemental common-law claims against all Defendants and state constitutional claims against Hartman and Taylor.

*Factual Background*

Hoard was convicted on June 28, 2011, of three counts of aggravated harassment and one count of assault III, and he was sentenced to eighty-two months in prison. (Spooner Decl. Ex. A, at 1-2, ECF No. 58; Taylor Decl. Ex. A, at 1, ECF No. 60.) He was taken into ODOC custody on June 30, 2011, and housed at the Snake River Correctional Institution ("SRCI") during the time period alleged in the Second Amended Complaint. (Taylor Decl. Ex. A, at 1, 3-4.)

The parties agree about the general events that form the background to this dispute. On the afternoon of December 21, 2012, defendants Hartman, Ortega, Saldivar, and Brown, all correctional officers at SRCI, removed Hoard from his cell to conduct an investigatory cell search for the head of a broken electric razor. (Real. Decl. Exs. B, C, D, ECF No. 59; First Am. Compl. ("Compl.") 2.) One of the officers directed Hoard to submit to restraints, and Hoard complied and was removed from his cell. (Compl. 2; Def.'s Mot. Summ. J. ("Mot.") 3.) Hartman restrained Hoard while Brown, Saldivar, and Ortega searched his cell. (Compl. 2; Mot. 3; Real Decl. Ex. B.) An altercation arose between Hoard and Hartman during this time, which resulted in Hoard being taken to the ground ("the Altercation"). (Compl. 2-3; Mot. 4.) After the

Altercation, medical staff treated a laceration on Hoard's forehead with glue and a "Steri-Strip" skin closure. (Purcell Decl. Ex A, ECF No. 61.) On or around January 8, 2013, Hoard complained to medical staff that he had been experiencing TMJ "popping" in his jaw since the Altercation, and he was treated with Toradal injections on February 26, 2013, to ease that continuing pain. (Aff. of Pl. Hoard for Opp'n to Def.'s Summ. J., Exs. B, F, ECF No. 42.) No misconduct report was filed against Hoard as a result of the incident. (*Id.* at Ex. H; Reply in Supp. of Def.'s Mot. Summ. J. 3.)

The parties disagree about the origins of the broken razor head. Hoard alleges Ortega gave him the razor, already broken, on the morning of December 12, 2012, and then denied his request for a working razor. (Compl. 2.) Defendants, by contrast, claim Hoard destroyed the razor. (Real Decl. Exs. A, at 2, B.) According to Defendants' account, Hoard surrendered the broken razor blades but refused to turn over the head of the razor, necessitating the cell search that preceded the Altercation. (*Id.*; Mot. 3.)

The circumstances leading up to the Altercation are also in dispute. Hoard alleges that once the cell search began, Hartman grabbed the collar of Hoard's shirt and began jerking it backward, causing the collar to tighten around his neck and making it difficult to breath. (Compl. 2.) When Hoard asked Hartman to stop this behavior, Hartman allegedly began to push Hoard's head around. (*Id.* at 3.) Hoard claims he politely asked Hartman to loosen his grip and then asked Saldivar to switch positions with Hartman because Hartman was being too rough. (*Id.*) According to Hoard's account, Saldivar asked Hartman to loosen his grip and to stop trying to provoke Hoard. (*Id.*) After Hartman said he had "everything under control," Saldivar apparently turned his back and returned to the cell search. (*Id.*)

Defendants' version of the lead-up to the Altercation differs from Hoard's. They claim Hartman directed Hoard to remain calm and keep his head forward. (Real Decl. Exs A, at 2, C.) Instead of complying with that directive, Hoard allegedly continued turning his head from side-to-side and talking to other inmates, and then bowed his back, pushing backwards towards Hartman. (*Id.*) Defendant Brown claims to have heard Hoard say "Fuck you" to Hartman. (*Id.* at Ex. B.) According to Defendants, Hoard's conduct made it necessary for Hartman to "place [Hoard] against the wall to control his movements." (*Id.* at Exs. A, at 2, C.)

The details of the Altercation itself are also in dispute. Hoard claims Hartman gripped his head with two hands and repeatedly slammed his face into a metal door, which caused him to temporarily lose consciousness. (Compl. 3.) Hoard also alleges that during the Altercation, Hartman pulled Hoard's pants and underwear down around his ankles. (*Id.*) When Hoard regained consciousness, Hartman allegedly slammed Hoard's face into the floor as Hoard lay in the fetal position. (*Id.*) Hoard contends Brown, Ortega, and Saldivar observed the beating but failed to intervene. (*Id.*) Hoard claims to have suffered TMJ and "bruises, cuts, [and] abrasions to his face, head, jaw, eyebrow and wrist" as a result of the Altercation. (*Id.*) Hoard claims he did not did not resist or threaten the Defendants during the altercation.[1] (*Id.*) Hoard also alleges he was "denied his property" from December 21, 2012, until January 10, 2013, but he does not identify the property that was taken. (*Id.*)

Defendants' version of the Altercation differs from Hoard's. They claim Hartman "placed" Hoard against the wall with minimal force in order to gain control of Hoard's aggressive behavior. (Real Decl. Ex. C.) According to Defendants, Hoard became more

---

[1] In his Second Affidavit, Hoard argues, "Even if I did 'pull away,' Hartman shouldn't have slammed my face into the wall." (Aff. of Hoard 2, ECF No. 65.) In light of its obligation to view the record in the light most favorable to the Hoard, the court does not construe this statement as an admission that Hoard actually pulled away from Hartman.

combative at this point, and Saldivar assisted Hartman in using minimal force to place Hoard on the ground after he observed Hoard pull away from Hartman. (*Id.* at Exs. C, D.)

The evidence contained in the summary judgment record establishes that Hoard filed a grievance related to the Altercation on January 6, 2013. (Taylor Decl. Ex. B, at 2-3.) On January 8, 2013, the Inspector General's office issued an incident report, concluding that no crime had been committed (the "Report"). (Capps Decl. Ex. A, at 1, ECF No. 63.) According to the Report, a second inmate, Gerald Johnston ("Johnston"), sent a complaint against Hartman to the Oregon State Police on December 21, 2012, claiming he and other inmates had witnessed the Altercation. (*Id.*) Hearings Officer Joe Capps ("Capps") sent Hoard a letter on January 8, 2013, notifying him that he had found "no evidence that a crime was committed or that the staff acted out of line," and informing Hoard that he would "consider the matter closed and [would] not be investigating." (*Id.* at Ex. B.)

Hoard filed a grievance appeal on April 4, 2013. (Taylor Decl. Ex. B, at 5.) On April 17, 2013, Taylor, the grievance coordinator, provided Hoard with a Grievance Response Form ("Form") explaining that the "grievance response [had been] delayed while a separate investigation was done . . . through the Special Investigations Unit under the office of the Inspector General," which ultimately concluded that "the use of force by Officer Hartman was appropriate." (*Id.* at 12.) The Form also explained that "incidences with a separate review process are not subject to the grievance process." (*Id.*) Because Hoard "requested and received a separate review process through the Inspector General's Office," his grievance could not be appealed. (*Id.*) Accordingly, Taylor returned the grievance appeal to Hoard on April 18, 2013, "due to non-compliance with the Department of Corrections (DOC) Rule #109 Grievance

Review System." (*Id.* at 4.)  Hoard filed a second grievance appeal on April 22, 2013, which

Taylor returned on May 2, 2013 for the same reason. (*Id.* at 7-8.)

During his incarceration, Hoard's behavior has raised several disciplinary and mental-

heath concerns.  Hoard has a long and varied history of rule violations, including staff and

inmate assaults. (Real Decl. Ex. F.)  He was convicted of possession of a weapon in violation of

OR. REV. STAT. 166.275 after a February 9, 2012, cell search revealed a plastic spoon that had

been sharpened to a point. (Holman Decl. Ex A, at 2-3; Real Decl. Ex. F, at 1.)  In addition, on

June, 24, 2012, Hoard reported to the behavioral services counselor that he was feeling

homicidal and "want[ed] to go on a killing spree." (Purcell Decl. Ex. B.)

*Legal Standard*

A court should grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a).  The moving party bears the burden of establishing that no issue of

fact exists and that the nonmovant cannot prove one or more essential elements of a claim or

defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the movant meets this burden,

the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial." *Id.*  However, a non-movant's failure to respond to a motion for

summary judgment is not, without more, justification for granting the motion by default.

*Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

On summary judgment, the court is bound to view all facts in a light most favorable to

the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v.*

*EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).  All reasonable doubt as to the existence of a

genuine issue of fact should be resolved against the moving party.  *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

*Discussion*

Defendants advance several arguments in support of the Second Motion with respect to Hoard's § 1983 claims.  First, they argue Nooth was not personally involved in depriving Hoard of any constitutional right, so he should be dismissed from the lawsuit.  Second, they argue Hoard's Fourteenth Amendment claim fails because he was not deprived of a protected liberty or property interest.  Third, Defendants argue Hartman, Ortega, Saldivar and Brown did not violate Hoard's Eighth Amendment rights because the alleged use of force was not excessive.  Finally, Defendants claim that even if they did violate Hoard's constitutional rights, they are shielded from liability by the qualified immunity doctrine.  In addition, Defendants argue Hoard's state-law claims are barred by the Eleventh Amendment.  With respect to damages, Defendants argue: (1) Hoard is not entitled to punitive damages or declaratory relief; and (2) Defendants are immune from damages in their official capacities.

I.  Section 1983 Claims

Section 1983 "provides a mechanism for enforcing individual rights."  *Gonzaga Univ. v. Doe*, 536 US 273, 285 (2002).  To prevail on a § 1983 claim, a plaintiff must establish that: (1) the defendants were persons acting under color of state law; and (2) their conduct deprived the plaintiff of a right or privilege secured by the Constitution or federal statute.  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  Section 1983 does not provide a cause of action for violations of state law.  *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).

Prison officials act under color of state law when acting in their official capacity. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). State officials sued in their personal capacity are persons for purposes of § 1983. *See Hafer v. Melo*, 502 U.S. 21, 25, 31 (1991). By contrast, state officials sued for damages in their official capacity are not persons for purposes of § 1983, and such suits should be treated as suits against the state. *Id.* at 25, 27.

### A. Mark Nooth

Hoard alleges Nooth violated Hoard's constitutional rights when he failed to take action to prevent the alleged use of excessive force and due process violation. However, liability under § 1983 must be based on a defendant's personal participation in the deprivation of the plaintiff's constitutional rights. *Barron v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Likewise, there is no respondeat superior liability under § 1983. *Taylor*, 880 F.2d at 1045. Thus, a supervisor may be held liable under § 1983 only if: (1) he was personally involved in the constitutional deprivation; or (2) a sufficient causal connection exists between the

supervisor's wrongful conduct and the constitutional violation. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

Hoard does not allege Nooth was personally involved in the deprivation of his constitutional rights, and a causal connection between Nooth and the alleged constitutional violations cannot be inferred from the facts alleged in the Second Amended Complaint. There is no indication Nooth directed the alleged violations or knew of and failed to prevent them. Hoard appears to have named Nooth in the Second Amended Complaint in an attempt to hold him responsible for the conduct of other SRCI staff based solely on his role as Superintendent, but such a theory of liability is not permitted under § 1983. Accordingly, summary judgment should be granted in favor of Defendants with respect to both of Hoard's § 1983 claims against Nooth.

### B. Fourteenth Amendment

Hoard alleges Taylor violated his rights under the Fourteenth Amendment, apparently by inadequately reviewing his grievances related to the Altercation. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's procedural guarantees apply only when a constitutionally protected liberty or property interest is at stake. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). Hoard's Fourteenth Amendment claim fails because the procedural adequacy of Taylor's administration of Hoard's grievance does not implicate a viable liberty or property interest.

The Ninth Circuit has held that a challenge to the procedural adequacy of a prison grievance procedure does not implicate a protected liberty interest because prisoners "lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)).

Thus, to the extent Hoard challenges the procedural adequacy of the ODOC's grievance procedure or Taylor's administration thereof, such claim cannot withstand the Second Motion.

Hoard's Fourteenth Amendment claim also fails if it is based on a deprivation of property. Although the Second Amended Complaint briefly mentions that Hoard was "denied his property" from December 21, 2012, until January 10, 2013, it provides no detail regarding what property he was deprived of, the reasons for the deprivation, or the negative effect such deprivation had on him. (Second Am. Comp. 3.) Because Hoard has failed to raise a genuine issue of material fact demonstrating that he was deprived of a constitutionally-protected liberty or property interest, summary judgment should be granted in favor of Taylor on Hoard's Fourteenth Amendment claim.

### C. Eighth Amendment

Hoard alleges Hartman's use of excessive force, and Ortega, Saldivar, and Brown's failure to intervene in the use of such force, violated Hoard's rights under the Eighth Amendment. The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments" on prisoners. U.S. Const., amend. VIII. The conduct of prison officials amounts to cruel and unusual punishment if it involves "the unnecessary and wanton infliction of pain." *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003). An Eighth Amendment claim involves two elements. The plaintiff must establish that the defendant: (1) used force which was "objectively harmful enough to establish a constitutional violation"; and (2) "acted with a sufficiently culpable state of mind." *Hudson v. McMillan*, 503 U.S. 1, 8 (1992) (internal quotation marks and alterations omitted). A prison official may be held liable for violating a prisoner's constitutional rights by failing to intervene to prevent such violation from occurring at the hands of another guard. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("Although

it is true that there are no allegations that Officers Cox and Morris took any action against any inmates, it is also true that a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene.").

When prison officials are accused of using excessive force in violation of the Eighth Amendment, the relevant inquiry is whether such force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *see also Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012). In making this determination, courts consider the following five factors:

> (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

*Martinez*, 323 F.3d at 1184. With respect to the first factor, the absence of serious injury is relevant to the court's inquiry but not dispositive. *Id.*

Defendants first argue the use of force in this case was *de minimis* and, therefore, does not fall within the purview of the Eighth Amendment. Next, in applying the relevant factors, Defendants argue: (1) Hoard suffered only *de minimis* harm; (2) the application of force was necessary under the circumstances; (3) the amount of force used correlated with the need for force; and (4) the use of force was a reasonable response to the perceived threat to the physical safety of the guards and the security of the institution.

Such arguments cannot be decided at summary judgment, however, because genuine disputes exist as to several material facts, including the extent of Hoard's injuries, the amount of force used, and the circumstances surrounding the use of such force. For example, Hoard alleges Hartman repeatedly slammed his head into the steel door until he lost consciousness, pulled down Hoard's pants and underwear during the beating, and continued to slam his head into the

ground as he lay in fetal position.  (Compl. 3.)  Hoard claims he never resisted or threatened Defendants during the Altercation.  (*Id.*)  Defendants, on the other hand, claim they used the minimal amount of force necessary to gain control of Hoard's aggressive and combative behavior and that such force was warranted considering Hoard's history of rule violations and staff and inmate assaults.  (Real Decl. Exs. C, D.)  The resolution of these and other factual disputes requires credibility determinations which the court is not permitted to make at this stage.

The Ninth Circuit has warned that summary judgment "should be granted sparingly" in excessive force cases precisely because, as here, such cases often turn on credibility determinations.  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).  In this case, the facts viewed in the light most favorable to Hoard reasonably could support a finding of excessive force.  Accordingly, summary judgment should be denied as to Hoard's Eighth Amendment claims against Hartman, Ortega, Saldivar, and Brown.

### D.  *Qualified Immunity*

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In resolving qualified immunity claims, the court must determine whether: (1) the facts, taken in the light most favorable to the injured party, demonstrate that the defendant's conduct violated a constitutional right; and (2) the violated right was "clearly established" at the time of the violation.  *Id.*

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  This determination should be based on the specific circumstances presented, rather than general

principles.  "If the law did not put the official on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  *Id.* at 202.

If the disputed factual allegations in this case are resolved in favor of Hoard, they would support a finding that Hartman, Ortega, Saldivar, and Brown violated Hoard's clearly established Eighth Amendment right to be free from cruel and unusual punishment.  Again, Hoard alleges Hartman slammed his head into a metal door until he lost consciousness, pulled down Hoard's pants and underwear, and continued to beat Hoard, even when he lay on the ground in fetal position.  He also claims that Ortega, Saldivar, and Brown observed the beating but failed to intervene.  As alleged by Hoard, this beating was out of proportion to the officers' legitimate need to protect themselves, secure Hoard's cell, and maintain discipline.  *See Martinez*, 323 F.3d at 1184 (laying out the factors to be considered in determining whether a guard's use of force was excessive in violation of the Eighth Amendment).

At the time the alleged use of excessive force occurred, it was clearly established that prison inmates were protected from wanton beatings that exceeded the officers' good-faith efforts to maintain or restore discipline.  *See, e.g.*, *Hudson*, 503 U.S. at 6-8; *Martinez*, 323 F.3d at 1184 (holding that qualified immunity was improperly granted to officers who allegedly beat an inmate during a cell extraction, despite the inmate's lack of resistance, because the law regarding excessive force was clearly established in 1994).  It was also clearly established that officials could be held liable for failing to intervene to prevent such a constitutional violation.  *Robins*, 60 F.3d at 1442.  Thus, if the issues of fact in this case are resolved in favor of Hoard, it would be clear to a reasonable officer that Hartman's alleged beating of Hoard, and the failure of Ortega, Saldivar, and Brown to intervene in that beating, was unlawful.

"Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). Here, Defendants' Eighth Amendment liability depends on disputed issues of fact. Accordingly, qualified immunity is not appropriate at this stage.

## II. State Law Claims

### A. Tort Claims

Defendants argue that under the Oregon Tort Claims Act ("OTCA") Hoard's assault, battery, and negligence claims must be construed as claims against the State itself, and not against the individual Defendants, and such claims against the State are barred by the Eleventh Amendment. The OTCA states, "The sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties . . . is an action under [the OTCA]." OR. REV. STAT. 30.265(2). Under this provision, "no other form of civil action is permitted" for such torts. *Id.* Thus, if an employee was acting within the course and scope of his or her employment at the time the allegedly tortious conduct occurred, the only proper claim is against the public body itself. "For an act to fall within the scope of employment, it must be of a kind which the employee was hired to perform, must have occurred within authorized time and space, and the employee must have been motivated, at least in part, by a purpose to serve [the employer]." *Hasse v. City of Eugene*, 85 Or.App. 107, 110-11 (1987).

In this case, all Defendants are sued for actions taken as ODOC employees. (Compl. 2, 4). The Second Amended Complaint contains no allegation that the actions of any of the Defendants fell outside the scope of their employment and, based on the material in the Second Amended Complaint, the court has no reason to conclude otherwise. Hartman, Ortega, Saldivar,

and Brown were conducting a cell search and restraining a prisoner consistent with their roles as prison guards for ODOC, the Altercation took place in the time and space consistent with their positions at SRCI, and there is no allegation that they were acting with any other purpose than to serve their employer. Likewise, Hoard's claims against Taylor and Nooth are based solely on the performance of their administrative roles at ODOC. Thus, under the circumstances here, the State, through ODOC, is the only proper defendant for Hoard's common-law tort claims. *See, e.g.*, *Silver v. Mitchell*, No. 3:11-cv-00092-HZ, 2011 WL 3585396, *at 6 (D. Or. Aug. 15, 2011); *Comfort v. Jackson County*, No. 1:09-cv-3060-CL, 2010 WL 2817183, at *3-5 (D. Or. July 16, 2010) ("[R]elief for common law claims against individuals must be brought under the OTCA and not common law."); *Hadley v. City of Beaverton*, No. 3:09-cv-00022-ST, 2010 WL 1257609, at *13 (D. Or. Feb. 16, 2010) ("As long as an employee was acting within the course and scope of his employment at the time the allegedly tortious conduct occurred, the only proper claim is against the public body itself."). Accordingly, Hoard's common-law tort claims against the Defendants should be dismissed, and the State should replace the individual Defendants as the sole defendant for Hoard's common-law tort claims.

Having determined that Hoard's tort claims are properly asserted only against the State of Oregon, the court must now address the viability of those claims under the Eleventh Amendment. The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. This provision represents "a real limitation on a federal court's federal-question jurisdiction," *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997), because it bars a citizen from bringing suit in federal court against the citizen's own state regardless of the relief

sought, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  Thus, "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  Because neither of those conditions is present in this case, Hoard cannot sue the State in federal court.

The State of Oregon has not consented to suit in federal court.  A state's waiver of sovereign immunity in its own courts is not determinative of whether that state has waived its Eleventh Amendment immunity in federal court.  *Edleman v. Jordan*, 415 U.S. 651, 677 n.19 (1974).  Although the OTCA contains a general waiver of immunity, it does not contain an express and unequivocal consent to suit in federal court.  As a result, the OTCA cannot be construed as waiving Oregon's Eleventh Amendment immunity.  *See Astadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  Neither does § 1983 express the requisite unequivocal congressional intent to abrogate the states' Eleventh Amendment immunity from suit.  *E.g.*, *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014); *Taylor v. List*, 880 F.2d 816, 824-25 (9th Cir. 2007) (explaining that Eleventh Amendment immunity applies to state agencies including the department of corrections).  As a result, the State is immune from suit in federal court.

In sum, Hoard's tort claims against the individual Defendants are premised on events occurring within the scope of employment with ODOC and may be asserted only against the State, through ODOC, pursuant to the OTCA.  Because the State is absolutely immune from liability on such claims under the Eleventh Amendment, summary judgment should be granted in favor of Defendants on Hoard's common-law assault, battery, and negligence claims.

/ / / / /

### B.  Oregon Constitutional Claims

Hoard also brings claims under the Oregon Constitution, alleging that Hartman violated article I, sections 13 and 16 and Taylor violated article I, sections 10 and 11.  Under section 10, "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."  Section 11 governs the rights of the accused in a criminal trial.  Section 13 provides, "No person arrested, or confined in jail, shall be treated with unnecessary rigor."  Section 16 prohibits cruel and unusual punishment.  Although Defendants do not address these claims in the Second Motion, the court is permitted to dismiss a claim *sua sponte* under Federal Rule of Civil Procedure 12(b)(6) without notice "where the claimant cannot possibly win relief."  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

The Oregon Supreme Court has concluded that "[v]iolation of a state constitutional right does not *per se* result in a civil or criminal sanction."  *Hunter v. City of Eugene*, 309 Or. 298, 302 (1990).  Thus, "a private right of action for damages against a municipality or its employees does not exist directly under the Oregon Constitution, but is limited to extant common-law, equitable, and statutory remedies."  *Barcik v. Kubiaczyk*, 321 Or. 174, 190 (1995).  Citing *Hunter* and *Barcik*, several courts in this district have dismissed freestanding claims brought under the Oregon Constitution, holding that "the appropriate remedy for constitutional violations by public bodies, officers, employees, and agents is the Oregon Tort Claims Act."  *Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F. Supp. 728, 730 (D. Or. 1995); *see also Millard v. Or. Dep't of Corr.*, No. 2:12-cv-01244-SI, 2014 WL 2506470, at *11 (D. Or. June 3, 2014); *Webber v. First Student, Inc.*, No. 1:11-cv-3032-CL, 2011 WL 3489882, at *6-7 (D. Or. July 12, 2011) *report*

*and recommendation adopted*, 2011 WL 3489915 (D. Or. Aug. 9, 2011); *Martinez v. Williams*, No. 3:09-cv-00580-ST, 2010 WL 5557132, at *4 (D. Or. Nov. 9, 2010) *report and recommendation adopted*, 2011 WL 64097 (D. Or. Jan. 5, 2011) *aff'd in part, rev'd in part and remanded*, 474 F. App'x 674 (9th Cir. 2012); *Standish v. Woods*, No. 3:03-cv-00933-AS, 2004 WL 1379466, at *2 (D. Or. May 10, 2004).

As explained fully in the preceding section, under the OTCA, claims against state employees based on actions taken within the scope of their employment are construed as claims against the State itself. The court has found the conduct relied on by Hoard in support of his claims against Hartman and Taylor is limited to actions taken in the course and scope of their employment. As such, Hoard's state constitutional claims must be construed as claims against the State itself. Because Oregon has not waived its sovereign immunity with respect to such claims, they cannot be brought in federal court. Thus, Hoard's Oregon constitutional claims should be dismissed pursuant to Rule 12(b)(6) because he cannot possibly win relief on such claims.

III. Damages

Defendants argue that punitive damages are inappropriate in this case because Defendants' conduct was not "outrageous." Punitive damages are available under § 1983 when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Indeed, such damages may be available even when a plaintiff is unable to show a compensable injury. *Id.* at 55 n.21. Here, if Hoard can prove to a jury that Defendants acted with evil motive or intent, or that their conduct amounted to reckless or callous indifference to Hoard's constitutional rights, then punitive damages will be appropriate. As

such, Defendants' Second Motion should be denied with respect to Hoard's claim for punitive damages.

Defendants also contend declaratory relief is improper in this context. Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The district court has broad discretion in determining whether to exercise jurisdiction over the declaratory action, so long as the court has jurisdiction over the underlying suit. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). In making such a determination, courts should consider whether jurisdiction would:

> (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties.

*Id.*

In this case, the declaratory relief Hoard seeks would involve the needless determination of state law issues, and it would not resolve all aspects of the controversy or serve a useful purpose in clarifying the legal relations at issue because the underlying damages claim necessarily entails the resolution of all of Hoard's claims. As the Ninth Circuit has explained, "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) (per curiam). Because neither of those goals will be accomplished by issuing declaratory relief in this case, the court should decline to exercise jurisdiction over Hoard's claim

for declaratory relief and summary judgment should be granted in favor of Defendants as to such relief.

Finally, Defendants argue that the Eleventh Amendment bars Hoard from seeking damages against Defendants in their official capacities.  It is not necessary to evaluate the validity of this argument, however, because the court already has disposed of Hoard's official-capacity claims against Nooth and Taylor; the only remaining claims are against Hartman, Ortega, Saldivar, and Brown in their personal capacities.  As such, the Second Motion should be denied as moot with respect to Defendants' official-capacity damages argument.

<em>Recommendation</em>

Based on the foregoing, Defendants' Motion for Summary Judgment (ECF No. 57) should be GRANTED in part and DENIED in part.  It should be GRANTED with respect to Hoard's: (1) § 1983 claims against Nooth; (2) Fourteenth Amendment claim against Taylor; and (3) state common-law and constitutional claims. It should be DENIED as to Hoard's Eighth Amendment claims against Hartman, Ortega, Saldivar, and Brown.  With respect to damages, the court should: (1) DENY the Second Motion as to punitive damages; (2) GRANT the Second Motion as to declaratory relief; and (3) DENY as moot the Second Motion as to the availability of damages for Hoard's official-capacity claims.

<em>Scheduling Order</em>

The above Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 21, 2015.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within 14 days after the date the objections are filed.    Review of the Findings and Recommendation will go under advisement when the response is due or filed, whoever date is earlier.

DATED this 4th day of December, 2015.

JOHN V. ACOSTA
United States Magistrate Judge